IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **QBE INSURANCE CORPORATION,** )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>**ESTES HEATING & AIR CONDITIONING, INC.** )<br>)<br>Respondent. ) | **CASE NO.:1:10cv456** |

## COMPLAINT FOR DECLARATORY JUDGMENT THAT INSURANCE POLICY DOES NOT AFFORD COVERAGE

Petitioner QBE Insurance Corporation ("QBE") files this Complaint for Declaratory Judgment seeking a determination that it owes no coverage to Estes Heating & Air Conditioning, Inc. ("Estes Heating & Air") under the Commercial General Liability Policy QBE issued to Estes relative to certain claims presented by multiple plaintiffs against Estes in two lawsuits filed in the Circuit Court of Mobile County, Alabama. Those cases are styled *Diges E. Little, et al. v. The Mitchell Company, Inc., et al.* with civil action number CV-09-901118-May and *Robert W. Henderson, et al. v. The Mitchell Company, Inc., et al.* with civil action number CV-2009-901153-May and have been consolidated (hereinafter referred to as the "Underlying Suit"). In support of the relief requested herein, QBE offers the following:

### I.    PARTIES, VENUE, AND JURISDICTION

1.    Petitioner QBE is a Pennsylvania business corporation with its principal place of business located in the State of New York.

2.    Respondent Estes Heating & Air Conditioning, Inc. is an Alabama corporation located in Mobile, Alabama with a principal place of business in Mobile County, Alabama.

3. Jurisdiction of this action is proper pursuant to 28 U.S.C. § 1332, as (a) there is complete diversity of citizenship between QBE and the Respondent, and (b) the amount in controversy (exclusive of interest and costs) upon information and belief exceeds $75,000.00.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

5. This proceeding is authorized by 28 U.S.C. § 2201.

## II. NARRATIVE OF FACTS AND UNDERLYING ALLEGATIONS

1. In 2006 the Mitchell Company, Inc. subcontracted Estes Heating & Air to install approximately 35 individual HVAC systems in a neighborhood described as the Bessemer Subdivision in Pritchard, Alabama.

2. Estes Heating & Air installed these units and each was inspected and approved by city officials.

3. At some point, according to the Plaintiffs in May of 2009, the Plaintiffs became aware of alleged defects in the Chinese Drywall materials that had been used in the homes and also of alleged defects in the HVAC systems installed by Estes Heating & Air. [See *Little* Complaint, attached hereto as Exhibit A, ¶28, and *Henderson* Complaint, attached hereto as Exhibit B, ¶28].

4. These alleged defects allegedly caused the Plaintiffs to suffer damages both to their person and property. [Exhibit A, ¶¶29-30; Ex. B, ¶¶29-30].

5. In general, the Plaintiffs allege that their claims arise out of the construction and lease of their residential homes, and the manufacture, formulation, design, processing, distribution, delivery, importation, supplying, inspection, testing, marketing, sale, warranting, advertising, use, installation, application, servicing and or failure to warn concerning Chinese drywall and/or the HVAC system which the Defendants knew or should have known was

defective or unsuited for its purpose. [Exhibit A, ¶2; Ex. B, ¶2].

6. They allege that due to the Defendants' conduct, the defective Chinese drywall was installed in their homes and has injured them and their property. [Exhibit A, ¶3; Ex. B, ¶3].

7. Further, they allege that the HVAC system was supplied, installed and serviced by Estes and that it was defective and not the proper size, and either caused damage to their property and health, or exacerbated the damage caused by the Chinese drywall. [Exhibit A, ¶¶3,30; Ex. B, ¶¶3,30].

8. According to the Complaint, Chinese drywall materials were made from waste materials collected from scrubbers at coal-fired plants in China or were made from Gypsum, a substance mined in China that contains high levels of sulfur. [Exhibit A, ¶22; Ex. B, ¶22].

9. Allegedly, the drywall materials emit a combination of sulfide gases which produce a chemical odor and can cause corrosion of copper and other metal materials such as those used in HVAC, electrical, and gas fuel systems, and other appliances, electronics and equipment commonly found in residential homes. [Exhibit A, ¶23; Ex. B, ¶23].

10. Plaintiffs allege that one of the gases emitted by the drywall is Hydrogen Sulfide, which is a broad spectrum poison which can cause serious health problems in the human body. Plaintiffs aver that low level exposure to this gas over time can lead to irritated, itchy eyes and skin, difficulty breathing, sore throat, persistent cough, nausea, bloody noses, headaches, fatigue, appetite loss, impaired memory function, sinus infection, allergic reactions and asthma attacks. [Exhibit A, ¶24; Ex. B, ¶24].

11. The Plaintiffs in the underlying actions allege that the Defendants knew or should have known of the defective nature of the Chinese drywall product before putting it in their homes but concealed or suppressed this knowledge from them. [Exhibit A, ¶¶27-28; Ex. B, ¶¶27-

28].

12. Specifically, they allege that as a result of the defective HVAC system, the gas producing properties of the defective Chinese drywall were worsened to their injury. [Exhibit A, ¶26; Ex. B, ¶26].

13. Further, the Plaintiffs state that they could not have discovered the defects in the Chinese drywall until December of 2008 when press reports touting the dangers of the product were first issued and that they did not receive actual notice of the use of Chinese drywall in their homes until May of 2009. Nor could they have discovered the defective nature of the HVAC system supplied and installed by Estes until May of 2009 after investigation of the Chinese drywall. [Exhibit A, ¶28; Ex. B, ¶28].

14. Regarding injuries, the Plaintiffs allege that as a result of the gas emissions and the conduct of the Defendants they have suffered the following damages:

    a) Personal injuries of the kind and form enumerated in the list above associated with the exposure to sulfide gases;

    b) Permanent injuries or the aggravation of pre-existing conditions;

    c) Pain and suffering;

    d) Mental anguish;

    e) Loss of enjoyment of their home;

    f) Increased utility and servicing costs;

    g) Past and future medical expenses;

    h) Past and future lost earnings;

    i) Property damage;

    j) Property damage to the HVAC system, electrical systems, and gas fuel systems in their homes;

k)  Property damage to appliances, electronics, equipment and other items in their homes;

l)  Relocation expenses and costs;

m)  Cleaning expenses and costs;

n)  The loss of financial and time investment in their homes;

o)  The loss of funds paid in the form of rent;

p)  Such severe, regular and systematic failures of the HVAC systems, electrical systems and gas fuel systems and other residential home systems/components so as to render their home unreliable, unsafe, uninhabitable and unfit for human occupation and use.

[Exhibit A, ¶29; Ex. B, ¶29].

15. The damages as enumerated were also allegedly directly and proximately caused, exacerbated and worsened by the HVAC system which was improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied and/or serviced, and which was so provided without adequate warnings. [Exhibit A, ¶30; Ex. B, ¶30].

16. The Plaintiffs allege twelve causes of action against Estes Heating & Air in the Underlying Suit:

a)  Count I- Negligence/Wantonness

b)  Count II – Strict Products Liability

c)  Count III – Unjust Enrichment

d)  Count IV – Implied Warranty of Habitability

e)  Count V – Implied Warranty of Fitness for a Particular Purpose

f)  Count VI – Implied Warranty of Merchantability

g)  Count VII – Express Warranty

    h) Count VIII – Violation of Alabama's Deceptive and Unfair Trade Practices Act

    i) Count IX – Breach of Contract

    j) Count X – Fraudulent Misrepresentation

    k) Count XI – Fraudulent Concealment/Suppression

    l) Count XII - Failure to Secure Performance Bond

[Exhibit A; Ex. B].

## III.   COMMERCIAL GENERAL LIABILITY POLICY

16.   QBE issued to Estes Heating & Air a Commercial General Liability Insurance policy bearing policy numbers ANM19903-6 for the policy period of November 29, 2008 to November 29, 2009. [See QBE's Commercial General Liability Policy, ANM10661-6, attached hereto as Exhibit "C" hereinafter referred to as the "CGL Policy"].

17.   The limit of the liability coverage provided under the CGL Policy is subject to various coverage provisions, endorsements, terms, conditions, limitations, and exclusions. [See Exhibit C].

18.   The CGL Policy includes (among other things) the following general provisions regarding coverage:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
    1.   **Insuring Agreement**
        a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
           (1)  The amount we will pay for damages is limited as described in

         Section III – Limits Of Insurance; and
- (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

  b. This insurance applies to "bodily injury" and "property damage" only if:
- (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
- (2) The "bodily injury" or "property damage" occurs during the policy period.

...

2. **Exclusions**
This insurance does not apply to:
- a. **Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
- b. **Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
  - (1) That the insured would have in the absence of the contract or agreement; or
  - (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
    - (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
    - (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

...

- f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".
  (a) At or from any premises, site or location which is or was at any time owned or occupied by or rented or loaned to, any insured. However, this subparagraph does not apply to:
    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.
    (ii) "Bodily injury" or "property damage" for which you may be held liable. If you are a contractor and the owner lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or
    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile" fire;
  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or
  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:
    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the

      premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf b y a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

2. Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects or, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit' by or on behalf of a governmental authority.

...

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are

performing operations, if the "property damage" arises out of those operations; or

 (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you. Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement. Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage to Your Product**
"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**
"Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
 (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
 (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work Or Impaired Property**
Damages claimed for any loss, cost or expense incurred by your or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
 (1) "Your product":
 (2) "Your work"; or
 (3) "impaired property";
If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

...

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
      
      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.
2. **Exclusions**
   This insurance does not apply to:
   a. "Personal and advertising injury":
      (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";
      (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with the knowledge of its falsity;
      (3) Arising out of oral or written publication of Material whose first publication took place before the beginning of the policy period;
      (4) Arising out of a criminal act committed by or at the direction of any insured;
      (5) For which the insured had assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;
      (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement";
      (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";
      (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

    (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

    (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

  b. Any loss, cost or expense arising out of any:

    (1) Request, demand or order that any insured or others test for, monitor, clean up. remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

...

## SECTION V- DEFINITIONS

...

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

...

9. "Insured contract" means:

  a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  b. A sidetrack agreement;

  c. An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  e. An elevator maintenance agreement;

  f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

    (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    (2) That indemnifies an architect, engineer or surveyor for injury or

      damage arising out of:
     (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or
     (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
  (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

...

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

...

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such losses of use shall be deemed to occur at the time of the "occurrence" that caused it.

...

20. "Your product" means:
  a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
   (1) You;
   (2) Others trading under your name; of
   (3) A person or organization whose business or assets you have acquired; and
  b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such good or products.

"Your product includes:
  a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
  b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:
  a. Work or operations performed by you or on your behalf; and
  b. Materials, parts or equipment furnished in connection with such work or

    operations.
"Your work" includes:
 a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
 b. The providing of or failure to provide warnings or instructions.

...

## POLLUTANTS DEFINITION AMENDMENT

All Coverage Parts or Coverage Forms included in this policy are subject to the following:

The definition of "pollutants" is replaced in its entirety by the following:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, radiation or radioactive contamination, dioxins, polychlorinated biphenols, pathogenic or poisonous biological or chemical materials and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

...

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:
This insurance does not apply to:
f. Pollution
 (1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
 (2) Any loss, cost or expense arising out of any:
  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

  (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

...

## AMENDMENT OF INSURED CONTRACT DEFINITION

14

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
Paragraph 9. of the Definitions Section is replaced by the following:

9. "Insured contract" means:
   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
   b. A sidetrack agreement;
   c. An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. An elevator maintenance agreement;
   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:
   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
       (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or
       (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

## IV.   COVERAGE ANALYSIS

19. The Underlying Litigation arises directly from allegations of damages including damage to property, damage to the plaintiffs' physical and mental health, and economic losses

caused by the discharge, release, emission, dispersal, seepage, migration, escape or off-gassing of sulfide gases from the Chinese drywall material placed in their homes and from the allegedly undersized and defective HVAC systems supplied and installed by Estes Heating & Air which contributed to the Chinese drywall off-gassing problem to exacerbate or worsen the damages.

20. Estes Heating & Air made a demand on QBE for defense and indemnification under the CGL Policy for the Underlying Suit.

21. The CGL Policy does not cover all risk of liability which may be legally imposed upon Estes Heating & Air.

22. Under Coverage Part A, the CGL Policy only covers acts constituting an "occurrence" causing "bodily injury" or "property damage" as those terms are defined in the Policy.

23. The CGL Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions".

24. The CGL Policy defines "property damage" as:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such losses of use shall be deemed to occur at the time of the "occurrence" that caused it.

25. The CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

26. An analysis of the claim asserted above, leads to the conclusion that no coverage is afforded to Estes Heating & Air under the CGL Policy.

27. No coverage is afforded to Estes Heating & Air for allegations in the Underlying Suit for damages which are purely economic losses of the plaintiffs because those losses do not

constitute "property damage" or "bodily injury" under the CGL Policy which would trigger coverage under the Policy.

28. No coverage is afforded to Estes Heating & Air for the allegations in the Underlying suit which do constitute "bodily injury" and/or "property damage" as those terms are defined because of the lack of an "occurrence", and/or the applicability of the Total Pollution Exclusion Endorsement, the Expected or Intended Injury Exclusion, the Contractual Liability Exclusion, the Damage to Your Product Exclusion, the Damage to Your Work Exclusion, and the Damage to Impaired Property or Property Not Physically Injured Exclusion.

V. REQUEST FOR DECLARATORY JUDGMENT AND RELIEF

26. QBE believes and avers that no coverage is afforded Estes Heating & Air under the CGL Policy.

27. QBE believes and avers that QBE owes neither a duty to defend nor a duty to indemnify Estes Heating & Air with regard to the allegations in the Underlying Litigation.

28. A justiciable controversy exists.

**WHEREFORE, THE ABOVE PREMISES CONSIDERED**, QBE prays that this Honorable Court:

A. Declare and decree that the CGL Policy issued to Estes Heating & Air does not afford coverage to Estes Heating & Air for the Underlying Suit; and

B. Declare and decree that QBE does not have a duty to defend Estes Heating & Air in the Underlying Suit; and

C. Declare and decree that QBE does not have a duty to indemnify Estes Heating & Air in the Underlying Suit; and

D. Afford QBE such other and further relief as the Court may deem proper.

Respectfully submitted this the 20th day of August, 2010.

_____
Thomas T. Gallion, III (ASB-5295-L74T)
Constance C. Walker (ASB-5510-L66C)
Michael W. Kelley, II (ASB-7825-I25K)

**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, LLC**
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
Telephone:    (334) 265-8573
Facsimile:    (334) 264-7945
Email:        ttg@hsy.com
              jj@hsy.com


**RESPONDENT SHALL BE SERVED VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

**Estes Heating & Air Conditioning, Inc.**
**P.O. Box 5548**
**Mobile, AL 36605**

336609_1
02391-1123